May it please the court, my name is Ronald Cirkin, I represent the appellant in this matter, Dr. Edwards, and I'd request to reserve two minutes for rebuttal, please. I think the issue in this case, your honors, is the tension between the summary judgment standard, which requires, of course, that evidence of the non-moving party be believed in all inferences drawn in the non-moving party's favor, versus the strong presumption of at-will employment, which under Pennsylvania law can only be overcome by a clear expression of the party's intent. And I think that it does not mean that there cannot be any contrary evidence. What it means is that if the plaintiff's evidence is believed, is that evidence strong enough to overcome the presumption? I think that's where the district court erred in this case. It erred in how it resolved the tension. What I would submit is that the district court failed to others of which there is some, at least minor, testimony to the contrary. But the first point is Dr. Edwards' testimony that of his conversations with Dr. Konka, who was the authorized representative of Geisinger Clinic, before the contract was entered into. You know, if you've got the contract agreement with the employment at-will clause in it, what difference does all this make? Because there is not a contractual agreement with the employment at-will clause in it, Your Honor. What you're referring to is this practice agreement, which was signed after Dr. Edwards began employment. He's made his deal and signed it. He willingly, voluntarily signed it. He did voluntarily sign it, but it's not contractual. And the district court did not find that that was contractual. What that was was something that he signed after he started work. There are relevant pieces of evidence. Well, what does it mean? I mean, what was the point of putting it in there? What was the point of the hospital putting it in there? Yeah. I don't know what the point of the hospital putting it in there was. What was the point of Dr. Edwards agreeing to it? The circumstances under which Dr. Edwards agreed to that, he testified to. Well, I mean, that's not much of an excuse for an educated man. I didn't bother to read it. That's not going to get you very far. It would be a serious problem for us if he had signed that before he started employment or if he had signed that before he made his deal. Then it would be contractual. It would be a problem for us. It was referenced, though, in the letter. It was referenced as a practice agreement. There was no description of its terms at all. But it was part of the letter, Rob. You acknowledge that, do you not? There was to be a practice agreement, but he didn't know what those terms were. Is there any dispute that the practice agreement was actually signed much later after he started employment? No. No dispute. That document, though, was backdated. The document was backdated. That's correct. But there is no dispute that it was signed after he began work. And I don't disagree that it's relevant evidence. It's evidence that the court and a jury ultimately can consider. I don't disagree with that argument at all. But it's not binding. That's my point. It's not the only case that Geisinger has cited on that issue of signing a document with at-will language in it is the Aiden case, A-Y-D-I-N. And that case involved a document which the court found to be contractually binding. What that was was an individual who was being paid on commission and he was an at-will employee and he signed a, he was not an employee for a term of years, I should say, and he signed a contract or a letter each year, a commission statement each year. And the court found that that commission statement was binding, was contractually binding on him for that current year. And that contained at-will language. I'm a little confused about your theory in the case. Are you claiming that there was an implied agreement for a specific, an implied agreement or are you claiming there was an express agreement for a specific term of years? No, we're claiming an express agreement here. We are clearly claiming an express agreement. Now, it's not all in the offer letter. It's a combination of the offer letter and the offer letter, as Dr. Edwards said. And what is the term of years? The term of years is a minimum of four years. Dr. Edwards testified that he thought he had a contract for six years. Dr. Conkett testified that the term was four to six years and the offer letter says four to six years. So we would say it's a minimum of four-year term. I want to ask you about, if you're familiar with the case of Schott v. Forstadell Bank Yes. Is our decision in that case in conflict with Pennsylvania at-will? No, Schott is not in conflict with Pennsylvania. And how do you interpret what we said the law is in Pennsylvania and Schott? I don't disagree with what the law is in Pennsylvania and Schott and it's the same as it was what this court said in Scully. Essentially, it said, though, that you don't, in this case, the case about unemployment, the question of whether you have a contract for active unemployment doesn't go to the jury unless there are exceptional circumstances. I don't, no, I don't agree with that. What do you say it says? What I say that Schott says is that it doesn't go to the jury unless you're able to overcome strong presumption of at-will employment and there are a variety of ways that you can do that, one of which is by an express agreement for a term of years. The Schott facts did not involve that. The Schott facts involved, as I recall, that there was a claim that the employer had a policy, a policy not to terminate employees except for just cause. What do you think the court meant with the words under exceptional circumstances? That you have to have evidence, at least as it relates to our case, that you have to have evidence of an express contract for a particular term. And I don't see anything inconsistent with our case and Schott at all. Schott, there's not a scintilla of evidence in Schott where either side said we've agreed to an employment contract for one year, two years, three months, anything like that. That was not the issue in Schott. The issue in Schott was there was an employer policy which was admitted that there would be no termination except for just cause. Could you explain to me just a little more what you mean by the argument that you make on additional consideration? Sure. The additional consideration, because we are not arguing an implied contract here. We are arguing an express contract. The Green versus Oliver Realty case, the Pennsylvania Superior Court case, and other cases say that you can look to the surrounding circumstances for evidence of whether there is an express contract or an implied contract. And in this case, all that I am arguing is that all of the evidence in this case, if Dr. Edwards' evidence is believed, is consistent with an express contract for a term of at least four years. And what the courts call additional consideration, I'm calling surrounding circumstances, that's the evidence of the fact that he was coming from London, that his wife would be relocating, the circumstances of the H-1B visa, which was that he has to work for the one employer under that visa. If he's terminated, he has to leave the country in 48 hours. These are all things that were known to Dr. Edwards and, according to the evidence, were known to the employer at the time they were having the conversations. So, therefore, that's evidence, together with the other evidence that we have, from which a jury can draw the inference that the parties were talking about a situation where there were some guarantees on both sides. And the guarantees... I'm sorry? That is correct, and I am not arguing that at all. All I'm saying is this evidence comes up in the phraseology, additional consideration, but I'm not arguing that theory. I am saying these are part of the surrounding circumstances which a court can consider in trying to divine what the party's intent was. And that's the basic rule of Pennsylvania contract law. What was the party's intent? If there was consideration provided by the employer to make that document legally enforceable, yes, it would be. No, no, no. I will admit to you that I don't recall the details of that, but the underlying facts in the case are that Dr. Edwards was paid in accordance with whatever the agreement was. There was never an issue of what his compensation was. It never came up in the case. So whatever he started at, it's what he expected to start at, and it's what the employer expected him to start at. So all I can say, Your Honor, is that that was never an issue that we even really got into because nobody questioned it. So I just can't answer that specific question. I do know factually it was not an issue in the case. So there really is nothing in the practice agreement. Geisinger's argument is that the practice agreement, the only consideration for the practice agreement is the continuation of employment. And my position is that that's almost a non sequitur because if we have a contract for a term of years, Geisinger was already obligated to provide him with employment for four years, so the continuing employment was not consideration. And if we don't have a contract for a term of years, we lose anyway, so it makes no difference. So there is no, the continuation of employment is not consideration. They have not cited and they have not argued any other consideration. There is no case that deals with our factual situation, which was an individual who signs a document after the fact that says, at will employment and enforces that in a way that undercuts what was previously agreed to. And our argument is what was previously agreed to was a contract for an express term of years. You know, it's really interesting here that they make, Geisinger makes such a point of the at will language in the practice agreement, which is in my view is strictly evidentiary, but then they completely ignore the fact that where you would normally expect at will language, which would be in the offer letter, which would be in the employment application, all of those places, you don't see at will language. Now, I understand that Pennsylvania law does not require an employer to have at will language. I mean, it's at will unless it specifies otherwise. It's at will unless specified otherwise. But here what we have is language in the offer letter that says, we will grant you four to six years. It doesn't say we may grant you. It doesn't say we will grant you subject to satisfactory performance. It doesn't say anything like that. It's expressed language in the offer letter that says, we will grant you four to six years. We also have Dr. Edwards' testimony where he said that Dr. Kanka said to him, do you understand I need you to be here for at least four years. We have the evidence from two of the doctors who interviewed Dr. Edwards, one of whom wrote that we discussed the fact that he will have to make a commitment for four years. Dr. Kanka acknowledged that he was familiar with that language. So we have all of this evidence back at the time they were negotiating the deal that is sufficient, if believed, to establish an express contract. Now, a jury can consider the fact that he signed that practice agreement after he started work. They can consider that ultimately. And we may lose that trial. I understand that. But you've also got determination for cause and other issues. That's an entirely separate issue which the district court did not get to. Which, I mean, at trial that will be. Yes, yes. That's an issue ultimately for trial. The district court did not get to that. I think I've used up my time. Yes, you certainly have. Okay, thank you. Mr. Sprague. Thank you. Police court, my name is Jonathan Sprague. I'm here on behalf of Geisinger Clinic. If Pennsylvania was not an at-will employment state, we would not be standing here. The case would either have been settled or we'd be at trial. However, Pennsylvania is an at-will employment state. And the at-will doctrine is alive and well. McLaughlin made that very clear just a few years ago. But it's merely a presumption. It is merely a presumption. It's a presumption. But it is a presumption with punch. And if you look at the colorful language the courts use in describing this presumption, heavy burden, clear clarity and specificity, you know, that a The question I have is where do you, when does it become a trial deluge? I mean, there are obviously cases where it does become a trial deluge. What does the plaintiff have to show to get the honor of summary judgment? Well, one of the cases you should look at is this court's case in Scully. In Scully, there was, at least initially, a two-year, a written two-year contract. Now, that contract was never signed. However, it was used as evidence to show the employer's intent to contract away, as a very clear statement of the employer's intent, to contract away the presumption protection. You also had in Scully a golden handcuff. You had, I think, what, $850,000 in stocks that could only come to value after two years. You have the equivalent here. You've got a monopoly that says you will be granted four to six years from the date of employment to become board certified. If board certification is not achieved by year six, you continue employment. You're advising your health system. You will need to be evaluated. Plus, you have the HB-1 visa that says you've got to work for a single employer for three years. Your Honor, respectfully, that evidence falls far short of what you have in Scully. Number one, it's not a $1 million golden handcuff. Number two, the record indicates that board certification was a job requirement at Geisinger. It was something that their physicians were expected to have. So as part of the give and take, you know, we would give Dr. Edwards an opportunity to become board certified, then four to six years, and he would work for Geisinger. But he could do that as an at-will employee. There was never, and there's absolutely no evidence in this record, beyond giving him an opportunity to become an at-will, to become a board certified, that there was ever an agreement that he had an expressed durational term of employment for which he could only be discharged for just cause. That is his interpretation. And based on this record, and this record alone, which requires a very clear statement of Geisinger's intent to contract away its at-will protections, that is not enough. Judge Caputo got it right. Now Judge Caputo acknowledged that inferences favorable to Edwards could be drawn from the evidence. Nevertheless, he found them all against it, the non-moving market. Now isn't this in conflict with our jurisprudence on some objections? It's in what I call, it's an unfortunate expression, but it's not in fundamental or functional conflict with Pennsylvania's at-will doctrine. You have an issue of conforming Erie with Rule 56. And under Erie, this court has to apply Pennsylvania law as established by the- Substantive law. Substantive law. Rule 56. Right. That's how I checked. It's procedural, I understand that. But applying Pennsylvania's substantive law, even in the context of Rule 56, there was no genuine issue material fact that there was a very clear statement that Geisinger intended to contract away its at-will protections. And that's where they merge. In a little bit, it's very similar to the HICWA presumptions in staff privilege litigation. I'm not saying the at-will presumption is equal to the HICWA qualified immunity from damages, but they're closely related. You look, there's a presumption that the employer was able to do what it did because courts don't want to second-guess employers. Courts don't want to interfere with that intimate, court's term, relationship between a master and a servant. And I think those concerns by the Pennsylvania Supreme Court were given credence by Judge Caputo, were given weight. And if I had been drafting the opinion while I would have drafted it differently, I think the spirit of Judge Caputo's opinion is correct.  And this case simply does not have that very clear statement, especially in light of the practice agreement where it's staring you right in the face. This is an at-will relationship. All right, and I know that. Let's put the practice agreement to the side. Without the practice agreement, you have a letter of offer, and you have the other circumstances surrounding the funder. You acknowledge that the practice agreement, although backdated to July 2006, wasn't signed until March 24, 2007. Correct. Correct. So without any additional consideration, did you really make a hanger case on the practice agreement? Did you do a hanger? It seems to me that I know you're arguing what was the presumption, but the bootstrap in your argument was saying, plus, we have this practice agreement. In paragraph whatever on page four, I'm not sure how many laymen would read an agreement that lengthy. That's a small print and come away with, whoops, this says I'm an employee at will. I'm not sure how many lawyers would read that and come away with saying this is an at-will. Well, I know one thing, again, under Pennsylvania law, an individual, especially an intelligent individual, is an international radiologist. It's presumed to know what he reads. And I also know that in the shock case, there was an at-will description in that case where it was a later signed deferred compensation agreement where it was stated, whereas the employee is shocked, the employee is employed at will by the company to serve in such capacities. So you had in shock a later signed agreement. There was additional compensation. There was no additional compensation other than continued employment. But the court didn't really focus. This court did not focus on the additional compensation. It just said, look, here's this man who's claiming he's not at will. He signed this agreement, another agreement, separate and distinct, which describes him as at will. And this court said, well, it's difficult to reconcile those contentions. I would be comfortable even without the practice agreement. I have such faith in the power and potency of Pennsylvania's at-will presumption law that even without the practice agreement, Judge Caputo got it right. Geisinger was entitled to summary judgment. I don't think the offer letter doesn't give him that very clear statement. There's no requirement to include at-will provisions in offer letters. It was no good deed goes unpunished. Geisinger needed this physician. It was an interventional radiologist. The physician needed board certification. And Geisinger said, okay, come on board. We'll give you time to become board certified. You can become board certified. We'll waive that requirement. And that's what happened. He did it as an at-will employee. I gave the analogy in my brief as law firms when they hire associates. And they may tell an associate, we'll give you a year to pass the bar. After that, we may have to reconsider this hiring. And you're going to tell me that during that year that associate is a contract employee while her mid-level or more senior associate counterparts are at-will employees because they passed the bar? It makes no rational, functional, operational sense. It just flips. It's not how the world works. And it's not how Pennsylvania law works or has been interpreted by our own Supreme Court. Not to demean your arguments here. Would that be a good argument for a juror? It would be. But it might not be a good enough argument to get you to come again? Well, we made this. I thought shock had strong effects. And then there's a summary judgment shock that in this case. I do not believe that this case, again, has the requisite, very clear statement. It's not there. I don't care what kind of strained interpretation. It's not a reasonable, rational result. And courts frequently decide or almost always decide on summary judgment these questions. So for all those reasons, I'm going to, again, beg the court to affirm Judge Caputo's summary judgment award. Thank you. I'd like to talk about Scully for a minute, the other Third Circuit case. In Scully, the point that was made was that in Scully, a written contract for two years had been tendered. And that was one of the big facts, excuse me, that made a difference. And that there was a golden handcuff in Scully. I want to address both of those points. If Dr. Edwards, let's assume Dr. Edwards testified. Dr. Konka came to me and said, I am offering you a four-year contract. Let's assume there was nothing in writing anywhere. I am offering you a four-year contract. And Dr. Edwards then said, I accept. That's oral evidence. That would be enough. And let's say Dr. Konka disagreed in his testimony and said, I never offered him a four-year contract. I never said that. On summary judgment, Dr. Edwards' testimony has to be believed. And that would be clearly evidence that would get us beyond summary judgment. This is evidence of an express agreement. Now here, what Dr. Edwards said that Dr. Konka said is, do you understand I need you to be here for at least four years? Now he doesn't say the word contract in there. But, you know, these are not lawyers talking. These are doctors talking. What about the language in the offer letter that it is subject to and conditioned upon Dr. Edwards' execution of the practice agreement? All I can say about that, Your Honor, is the practice agreement was never presented to Dr. Edwards. Dr. Edwards, there's no indication that. Well, it wasn't perhaps presented that day, but it ultimately was. It was presented to him after he began employment. Those are the facts in this case. If the facts in this case were that it were presented to him before he signed the offer letter, I wouldn't be up here today. I would not be up here today. But the offer letter is subject to and conditioned upon the practice agreement. But they didn't say what the practice agreement was. If they were trying to enforce it. If Dr. Edwards wanted to go ahead and sign that he was subject to and conditioned upon, I mean, hasn't he signed into that? No. He has not signed into the non-complete under Pennsylvania law because there was no additional consideration. It would be clear if we were dealing with non-complete matters here that just saying you're going to have to – what if the document said we're going to have you sign our benefits statement? Let's say the offer letter said you're going to sign the benefits statement and then buried in the benefits statement was the statement of at-will employment. Well, you know, you better read your documents before you sign them. My daughter is a doctor and she brought home a contract and I said you better make sure what this says and what additional documents this may be conditioned upon and subject to. And she did. And it may be that Dr. Edwards should have gone back when he's over in England and written back to them and said you didn't send me the practice agreement. Right. It should also be that when he sent back all the signed documents, which did not include the practice agreement, that the employer should have said you didn't send us back the practice agreement. Here's another copy of the practice agreement. That's all evidence for the jury to decide on the importance of the practice agreement. The fact is that the practice agreement is not contractual. It is not contractual because its terms were just never disclosed. And, you know, what we have in Scully – I get back to Scully where we have the equivalent evidence in Scully. We really do have a golden handcuff here because that ABR certification, you know, I think Mr. Sprague said it's not a million-dollar golden handcuff. Well, the reality is that the ABR certification is probably more than a million-dollar golden handcuff to get that. So it is a very important point. Thank you. Thank you.